**UNITED STATES of America,
Plaintiff,**

v.

**SUNNY HILL FARMS DAIRY COMPANY, Inc., Defendant.**

**No. S 64C 31.**

United States District Court
E. D. Missouri,
Southeastern Division.

May 31, 1966.

---

Richard D. FitzGibbon, Jr., U. S. Atty., by Stephen H. Gilmore, Asst. U. S. Atty., St. Louis, Mo., for plaintiff.

Veryl L. Riddle, of Riddle, O'Herin & Newberry, Malden, Mo., for defendant.

## MEMORANDUM OPINION

HARPER, Chief Judge.

This action was brought by the United States pursuant to the provisions of Section 8a (6), Agricultural Marketing Agreement Act of 1937, as amended (7 U.S.C.A. § 601 et seq.). The suit was brought to enforce compliance with Order No. 97 regulating the handling of milk in the Memphis, Tennessee, area. The defendant, a Missouri corporation, operated at Cape Girardeau, Missouri.

A partial disposition of the case was made by Judge Meredith on December 7, 1965. That disposition denied plaintiff's prayer for temporary injunction, denied the motion of plaintiff to strike defendant's defense, and denied the motions of both parties for summary judgment.

The exhibits, Federal orders regulating the handling of milk, and the testimony, disclose that since the early part of March, 1964, the defendant has been selling milk in the Memphis market area. The plaintiff claims that the defendant is indebted to the Market Administrator in the sum of $53,058.69, plus administrative expenses of $5,659.44, which sums plaintiff claims are the amounts due under the provisions of the Memphis Market Order No. 97 from March 1, 1964, to February 1, 1965.

The defendant contends that the Memphis Order No. 97 creates a trade barrier which is prohibited under the terms of 8c(5) (G) of the Act (7 U.S.C.A. § 608 c(5) (G), which defense the plaintiff contends cannot be raised.

The defendant, a dairy company, operates primarily in the Southeast Missouri area. Most of defendant's business is transacted in the area of Cape Girardeau, but it does some business in St. Louis, and during the period in question approximately 15% of its business was in Memphis. Prior to February 1, 1965, the defendant was not in a milk marketing area established by the Department of Agriculture. On June 4, 1962, the defendant petitioned the Secretary of Agriculture to extend the St. Louis milk market area to include its operation in the Cape Girardeau area. One year later, in June of 1963, the Secretary held his hearings on the petition. Ten months later, in March of 1964, the defendant, having received no decision from the Secretary regarding its petition, began to sell milk in the Memphis area. Under the terms of the Memphis order (Order No. 97), once the defendant has brought more than 5% of its total production into the Memphis market area, it is required to pay to the Administrator a certain fee for each one hundred weight of milk produced, absent being subject to the regulations of another marketing area. The price of milk in the St. Louis market area was thirty to forty cents per hundred weight less than in the Memphis market area, and the defendant was paying approximately 15¢ per hundred weight above the price paid in the St. Louis market area. Had the defendant been in the St. Louis market area at the time the milk was sold in Memphis, since it was not selling more than 50% of its total production in the Memphis market, it would not have been subject to Order No. 97.

Upon the basis of the testimony introduced at the hearing in June of 1963, previously referred to, the Deputy Administrator of the Regulatory Program of the Department of Agriculture on May 15, 1964, filed with the Hearing Clerk his recommended decision, containing notice of opportunity to file written excep-

tions thereto. In this recommended decision the Deputy Administrator placed the defendant in the St. Louis marketing area. The Federal Market Administrator for Memphis was aware that the defendant had filed its petition to be included in the St. Louis market area in June of 1962, but unmindful of this knowledge, and unmindful of the fact that the Deputy Administrator's recommendation had been filed on May 15, 1964, plaintiff's suit was brought on July 15, 1964, some two months after the recommendation had been filed by the Deputy Administrator that the defendant be included in the St. Louis marketing area, which meant that defendant was not subject to Order No. 97 pertaining to the Memphis area if the recommendation was adopted. It was because of this pending petition of the defendant's that Judge Meredith denied the motion for temporary injunction and insisted that the Department of Agriculture decide the matter, and when the order was subsequently filed on November 10, 1964 (Federal Register, pp. 15,130–15,151), which order is dated November 5, 1964, two years and five months after defendant filed its petition, the motion for injunction became moot.

The defendant has at all times offered to pay the fee involved for the milk actually sold in the Memphis market area, but the plaintiff contends that the fee should be paid for all milk produced by the defendant regardless of where it was sold. The defendant contends that the Memphis order is invalid as applied to it, since it constitutes a trade barrier prohibited by 7 U.S.C.A. § 608c(5) (G). The plaintiff contends that the defendant cannot raise this objection since it has not applied to the Secretary for exclusion from Order No. 97 regulating the Memphis area under the terms of 7 U.S.C.A. § 608 c(15).

The doctrine of exhaustion of administrative remedies can be a complicated one, but in this instance the defendant had sought administrative relief from such a position as it was in by filing on June 4, 1962, almost two years before any milk was sold in the Memphis area, a petition seeking to be included in the St. Louis market area, which, if granted, would have prevented the application of the Memphis order to the sales that it made in the Memphis area. The defendant its attorney on several occasions after the hearing in 1963 sought a ruling by the Secretary on the hearing, to no avail, before entering the Memphis market. The defendant personally sought relief from the Federal Milk Market Administrator at Memphis before entering the market, seeking to be permitted to abide only by the Memphis market rules on the milk sold in the Memphis market, to no avail. He did not file any petition in Memphis to seek such relief.

The petition filed by defendant with respect to the St. Louis area was processed by the Secretary's office, the same office which would have processed any petition filed in Memphis had the defendant applied for relief under the Memphis order.

The plaintiff would have the court ignore the defendant's petition for administrative relief filed in June, 1962, with which it was familiar, ignore the recommendations made by the Deputy Administrator as early as May 15, 1964, and recover for all sales by the defendant for the period in question. Can one say that administrative relief was not sought? Of overriding importance in this case is the fact that justice and basic fairness must prevail, and the record is clear that the plaintiff knew of the defendant's application for administrative relief long before it sought to enforce the order it now seeks to enforce. The defendant had been trying to go into the Memphis market since 1961, and finally, after a delay of almost two years, since it administratively sought relief, finding itself unable to get a ruling, went into the market. The record would indicate that had the defendant filed for such application in Memphis with respect to the small percentage that it wanted to sell in that market it would have taken approximately three years to get relief, if it is to be judged by its experience with the

petition to be included in the St. Louis market area.

The courts have held that where the requiring of exhaustion of administrative remedies would be futile because of the uncertainty of adverse decision the remedy need not be exhausted. City Bank Farmer's Trust Co. v. Schnader, 291 U.S. 24, 54 S.Ct. 259, 78 L.Ed. 628; Gully v. Interstate Natural Gas Co., 5 Cir., 82 F.2d 145 (Cert. den'd 298 U.S. 688, 56 S.Ct. 958, 80 L.Ed. 1407). (See also Davis, Administrative Law Treatise, Sec. 20.07.) The defendant had tried for over two years to have the Secretary act, without success. After what may amount to a flagrant abuse of discretion, the government cannot now come before the court and ask this court to require the defendant to perform more frustrating and futile actions. Judge Meredith in his order filed December 7, 1965, said:

" * * * insofar as this particular case is concerned, this defendant by attempting to get itself into the St. Louis regulated market has done all that can be expected of it as far as administrative relief is concerned."

This court agrees.

This brings us to the discussion of the defendant's claim that the Memphis order acts as a trade barrier. The Supreme Court struck down an order in Lehigh Valley Cooperative Farmers, Inc. v. United States, 370 U.S. 76, 82 S.Ct. 1168, 8 L.Ed.2d 345. The *Lehigh* case involved an order by which "for each hundredweight of nonpool milk sold for Class I used in the New York-New Jersey area, a payment equal to the difference between Class I and Class III prices must be made by the seller to the Producer Settlement Fund." (L. c. 83, 82 S.Ct. at page 1172.) This order had the effect of causing the seller to pay to the Producer Settlement Fund more than the difference between the seller's price and the artificial, protected price in the New York-New Jersey area.

The same effect would result if the Memphis order were applied to the defendant in the manner sought by the Secretary. Defendant would be required to pay the difference between his price and the protected price in the Memphis area, not only on the milk sold in the Memphis area, but on all milk sold in all locations. This has the obvious effect of penalizing the defendant for selling in the Memphis area and sets up a trade barrier that would prevent the defendant from marketing in its principal area of operation. He was paying 15¢ a hundred weight above the St. Louis market and 15¢ to 25¢ below the Memphis area. When he was finally placed in the St. Louis area the order provided he pay 15¢ above the St. Louis price. To require defendant to pay 15¢ to 25¢ above its regular price for all its milk would make it financially impossible to operate in the area where approximately 85% of the defendant's business was.

Considering the record in this case, plaintiff is entitled to judgment for only the assessments on the milk actually sold in the Memphis market area from March 1, 1964, to February 1, 1965, and only to this amount, since the defendant has stated and pled that it only owes said amount.

This memorandum opinion is adopted by the court as its findings of fact and conclusions of law, and the attorney for the plaintiff will prepare the judgment, including the amount due as outlined, submit to the attorney for the defendant for approval as to amount and form, and then to the court for entry.